IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN SOLITAIRE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 19-132 |
| | § | |
| EASY WAY LEISURE CORP. dba | § | |
| EASY WAY PRODUCTS, | § | |
| | § | |
| Defendant. | § | |

_____

**PLAINTIFF JUAN SOLITAIRE'S ORIGINAL COMPLAINT AND JURY DEMAND**
_____

For his Original Complaint against Defendant Easy Way Leisure Corp. (dba Easy Way Products), Plaintiff Juan Solitaire shows the following:

**INTRODUCTION**

This is an action for employment discrimination, including failure to provide reasonable accommodation and discriminatory discharge from employment, under the Americans with Disabilities Act as amended ("the ADA") and its Texas analog, the Texas Commission on Human Rights Act ("the TCHRA").

**PARTIES**

1.      Plaintiff Juan Solitaire is an individual residing in Brownsville, Cameron County, Texas. He may be served with papers in this case through the undersigned counsel.

2.      Defendant Easy Way Leisure Corp dba Easy Way Products is a corporation organized under the laws of the State of Ohio. It maintains its principal place of business at 412 South Cooper Ave., Cincinnati, OH 45215. It may be served with process through its registered

agent for service of process in Texas to CT, A Wolters Kluwer Business at 1021 Main St., Ste. 1150, Houston, Texas 77002.

## JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this lawsuit because Plaintiff's claims arise under a federal statute, the Americans with Disabilities Act. The Court has supplemental jurisdiction over Plaintiff's claim for disability discrimination under the Texas Commission on Human Rights Act. The Court has personal jurisdiction over Defendant because Defendant is registered to do business in Texas and in fact operates a facility, where Plaintiff was employed, in Brownsville, Texas. Venue is proper in the Southern District of Texas because all of the events giving rise to Plaintiff's claims occurred within the geographic confines of the Brownsville Division of the Southern District of Texas.

## FACTUAL BACKGROUND

4. Defendant designs and manufactures cushions, drapes, umbrellas, and covers for outdoor furniture. On or about July 9, 2018, Plaintiff commenced work for Defendant as a shipping coordinator at Defendant's facility in Brownsville, Texas.

5. On Sunday, August 5, Plaintiff was rushed to the hospital due to chest pains. This occurred on his day off from work. While he was at the hospital, he was diagnosed with Atrial Fibrillation ("AFib"). AFib is a quivering or irregular heartbeat (arrhythmia) that can lead to blood clots, stroke, heart failure, and other heart-related complications. Since he was scheduled to work on Monday, August 6, Plaintiff texted my supervisor—Eli—that morning. Plaintiff explained that

he was hospitalized and that he did not know how long he was going to be there. Eli responded that he hoped Plaintiff got better, and not to worry about it.

6.     Plaintiff was released from the hospital later that day. The hospital advised Plaintiff to follow up with his general doctor. Plaintiff met with his doctor on Tuesday, August 7. Plaintiff's general doctor than referred him to a cardiologist, but released him to return to work the following day (Wednesday, August 8).

7.     Plaintiff returned to work on Wednesday, August 8. He worked for a few hours without any problems. However, in the afternoon, Plaintiff experienced chest pains. He immediately let his supervisor (Eli) know, then told Eli that he (Plaintiff) was going to the hospital. Eli said, "Just go, get it taken care of, and let me know what's going on." Plaintiff had every intention of keeping my employer informed, just as he had since my first hospital visit. When Plaintiff went to the hospital, the doctor told him that the pains were likely connected to the new heart medication he was given. Plaintiff was released from the hospital around 9pm that night.

8.     On Thursday, August 9, Plaintiff returned to work. Plaintiff presented Ray, the manager, with his doctor's note. He then instructed Plaintiff to give it to Eli, Plaintiff's direct supervisor. Later that morning, Ray called Plaintiff into the conference room. Eli was in there as well. Ray asked to see Plaintiff's medical paperwork because he wanted to know Plaintiff's diagnosis and what kind of medication Plaintiff was taking. Plaintiff showed Ray his paperwork, then pointed out the AFib diagnosis and the medication he was taking. Ray specifically said that his mother was a pharmacist and that is why he wanted to see the medication. Ray then proceeded to ask if Plaintiff was sure that he could do his job. Plaintiff responded yes. Plaintiff also reminded him that he was going to have a 2-3 doctor's appointments coming up simply because he needed

additional tests run on my heart.  Plaintiff was hoping these final appointments would resolve the issue.  Ray said, "Okay."

9. On or about Thursday, August 23, 2018, Plaintiff was attending a doctor's appointment to have some bloodwork done.  Plaintiff had informed Eli about the appointment ahead of time.  He told Plaintiff not to worry about it and that he (Plaintiff) did not need to come in to work that day.  After the bloodwork, I ended up back in the hospital for chest pains again.  I informed Eli that I was at the hospital, and at this point I did not know whether or not I was going to be admitted.  Eli said, "Make sure you try to make it into work tomorrow."  Plaintiff told Eli, "I will be there if I'm not hospitalized."  Plaintiff was released from the hospital later that night.

10. Plaintiff returned to work the following day (August 24).  Plaintiff started working, but was later called into the conference room with Eli and Ray.  When Plaintiff arrived in the conference room, Ray advised Plaintiff that Easy Way needed to "separate themselves" from him.  Plaintiff immediately asked, "Why?"  Ray's initial answer was, "I don't know."  However, before Plaintiff left, Ray said, "As a friend, I suggest you take care of your medical situation before you look for future employment."

11. Although Defendant now contends that Plaintiff was terminated for absences unconnected to his medical condition, Plaintiff had his supervisor's approval for all of his absences, both those connected with his medical condition and those that were not. In fact, Defendant has a progressive discipline policy, but it was never used with respect to Plaintiff.  Plaintiff was never written up regarding his attendance or otherwise.

## DISABILITY DISCRIMINATION UNDER THE ADA AND TCHRA

12. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 11 supra.

13. At all times relevant to this lawsuit, Defendant has been an employer within the meaning of the ADA and the TCHRA. In this regard, Defendant employed more than 15 employees in at least twenty weeks in both 2017 and 2018. Likewise, there can be no dispute that Plaintiff was employed by Defendant and that Plaintiff was entitled to all rights and protections afforded by the ADA and the TCHRA.

14. Plaintiff was fully qualified for the job he held with Defendant. Plaintiff suffers from Atrial Fibrilation, which caused symptoms and limitations that required Plaintiff to miss time from work. Because Plaintiff specifically informed his supervisor and manager of his diagnosis, his symptoms, his need to be absent from work due to his medical condition, and the medications he had been prescribed, there can be no question that Defendant was aware of Plaintiff's medical condition. Plaintiff alleges that he was suffered from a disability within the meaning of the ADA and TCHRA, or in the alternative, that Defendant "regarded him" as having a disability within the meaning of these laws. In this regard, the ADA and the TCHRA, as amended in 2008, an employee is "regarded as" disabled if he is subject to an action prohibited by the ADA/TCHRA (e.g., failure to hire or termination) based on an impairment that is not transitory and minor.

15. Plaintiff alleges that he was discharged from employment because of his disability, or in the alternative, because Defendant regarded him as disabled. Although Defendant now contends that it discharged Plaintiff from employment for absences unconnected to his medical condition, Plaintiff had his supervisor's permission each time he was absent from work. Moreover, Defendant has a documented progressive discipline policy that was not followed in Plaintiff's case. Plaintiff was never counseled or disciplined due to his non-medically-related absences. Plaintiff contends that Defendant's now-stated reason for his discharge was a pretext for discrimination prohibited by the ADA and TCHRA.

16. As a result of Defendant's discriminatory conduct, Plaintiff has suffered lost wages and benefits, and in all reasonable probability, will likely suffer such damages in the future. Additionally, Plaintiff has suffered emotional distress, mental anguish, humiliation, and loss of enjoyment of life. Because Defendant's discriminatory actions were committed with malice, or at least with reckless disregard towards Plaintiff's legally-protected rights, Plaintiff is entitled to an award of punitive damages. And because Plaintiff has had to retain legal counsel to vindicate his legal rights, Plaintiff is entitled to an award of attorney fees.

## ADMINISTRATIVE PREREQUISITES SATISIFED

17. Plaintiff has complied with all administrative prerequisites to filing suit. He dual-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission and Texas Workforce Commission within 180 days of the discriminatory practices complained of in this lawsuit, and he has received a Notice of Rights from the EEOC. He has filed this lawsuit within 90 days of receiving said Notice.

## JURY DEMAND

18. Plaintiff demands a trial by jury.

## CONCLUSION AND PRAYER

Plaintiff prays that, upon final judgment, he be awarded the following:

1. Lost wages and benefits in the past and in the future;
2. Compensatory damages for emotional distress, mental anguish, humiliation, and loss of enjoyment of life

3. Punitive damages;

4. Attorney fees;

5. Costs of court; and

6. All other relief to which Plaintiff is entitled.

                                      Respectfully submitted,

                                      /s/ Michael V. Galo, Jr.
                                      Michael V. Galo, Jr.
                                      State Bar No. 00790734
                                      GALO LAW FIRM, P.C.
                                      4230 Gardendale, Bldg. 401
                                      San Antonio, Texas 78229
                                      Telephone: 210.616.9800
                                      Facsimile: 210.616.9898
                                      email: mgalo@galolaw.com
                                      ATTORNEY FOR PLAINTIFF
                                      JUAN SOLITAIRE